# Mott *against* Danforth.

An action on the case against two individuals for agreeing and conspiring with a third person to defraud his creditors may be maintained, when in pursuance of such agreement, the defendants took assignments of his property, and aided him in getting out of the state, by which means the plaintiff was defrauded and prevented from recovering his debt. The fact that the debt of the plaintiff was not payable at the time of the alleged fraud, is no objection to the action.

In such action, the measure of damages is the value of the property withdrawn from the reach of the plaintiff, and not the amount of the debt due to him.

ERROR to the common pleas of *Susquehanna* county.

This action was brought by Josiah Danforth against Ithamar Mott and Sylvanus Mott, in case for a conspiracy and fraud. The declaration alleges in the first count, that George Tarbox was indebted to the plaintiff in the sum of 998 dollars and *interest, on a* note dated the 8th of May 1833, payable in .six months, and the defendants intending to deceive and defraud the plaintiff of his debt, excited, moved, advised, and procured Tarbox to depart and leave the country, and go to places unknown to the plaintiff, without paying said debt, whereby it was totally lost. The second count, after averring the same indebtedness, charges, that Tarbox was possessed of goods and chattels sufficient to pay the same, yet the defendants contriving and intending to injure and aggrieve the

[Mott v. Danforth.]

plaintiff, and prevent the payment of his debt and to defraud him thereof, conspired with Tarbox to secrete and eloigne to places unknown to the plaintiff, the said goods and chattels, and did so secrete and eloigne them, and converted them to their own use, whereby the plaintiff lost his debt. The third count, after averring the indebtedness and the possession by Tarbox of goods and chattels, rights and credits, &c., alleges, that the defendants contriving, and fraudulently intending to deceive and defraud the plaintiff, by covin and conspiracy with Tarbox, to defeat and prevent the plaintiff from recovering his debt, secreted and eloigned to places unknown to the plaintiff, the said goods and chattels, rights and credits of Tarbox, and aided, and assisted, advised and procured him to depart and leave the country, and go to places unknown, by reason whereof the debt was totally lost.

Much evidence was given on the trial, from which it appeared that Tarbox had been travelling about the county of Susquehanna and the neighbourhood, for two or three years as a pedlar, being in possession of a wagon and horses, and valuable dry goods, jewellery, and other articles of merchandise: and that in May 1833, he purchased of the plaintiff in Connecticut, near 1000 dollars worth of articles, at a credit of six months, for which he gave his promissory note. He also purchased of two other persons in that state to a considerable amount. The plaintiff alleged, and gave evidence to prove, that the defendants were very intimate with Tarbox, and well acquainted with the state of his affairs and indebtedness in Connecticut, as well as for divers small amounts in the neighbourhood; that they colluded with him in various ways, to enable him to defraud his Connecticut creditors, and that for this purpose, they finally in October 1833, about eight days before the plaintiff's note became due, obtained from him, his wagon and horses, and merchandise, as well as notes and securities for debts due to him, by a sale or pretended sale, and assisted, and accompanied him in absconding from the state, leaving his debts unpaid, taking with them, and otherwise disposing of, his property and effects.

Various points were presented to the court by the counsel for the defendants, all of which seemed to be substantially summed up in the concluding charge of the court, which has been the main subject of argument here. That is, as follows:

Herrick, president. "If the jury think, from all the evidence in the cause, that Ithamar and Sylvanus W. Mott, conspired with Tarbox to defraud his creditors, and that in pursuance of such agreement, the defendants took assignments of his property, and aided and assisted him in getting out of the state, with his property, moving to places unknown, by which means the plaintiff was defrauded and prevented from the recovery of his debt, this action can be maintained And the court think if the plaintiff's note was not payable for eight days, it would make no difference, if by the means of the conspiracy and fraud, the plaintiff is de-

VI.—2 o

[Mott v. Danforth.]

frauded and prevented from the recovery of his debt. Nor would it be material, that the defendants did not know that the plaintiff was a creditor, provided the conspiracy was to defraud all Tarbox's creditors in Connecticut, and the plaintiff was one of them. If the jury should be of opinion that the plaintiff ought to recover, they may find the amount of the plaintiff's claim if they think proper, provided the goods, notes and money assigned, and taken off by Mott and Tarbox by conspiracy and fraud, amount to such claim, but they can find for no greater sum than the amount so assigned and carried off as aforesaid. The jury found a verdict for the plaintiff for 796 dollars 52 cents.

*Jessup* and *Conyngham*, for plaintiff in error, cited 1 *Bac. Abr.* 87; 2 *Stark.* 406; 8 *Serg. & Rawle* 522; 11 *Johns. Rep.* 139.

*Dimmock* and *Greenough*, contra, cited *Plead. Ass.* 80; *Carth.* 3. It matters not that the debt was not due, 5 *Am. Com. Law* 205; 7 *Wend.* 9; 5 *Am. Com. Law* 464. That there is no legal cause of action, 4 *Watts* 361; 1 *Rawle* 362; 5 *Watts* 65; 2 *Penns. Rep.* 126.

The opinion of the Court was delivered by

SERGEANT, J.—The action on the case for a conspiracy, has in modern times taken the place of the writ of conspiracy, which seems to be considered as antiquated. The instances of these suits in our reports, are not very numerous, but sufficient appears to show that an action on the case lies wherever the plaintiff is aggrieved and damnified by unlawful acts, done by the defendants, in pursuance of a combination and conspiracy for that purpose. It is said by TILGHMAN, C. J., in Griffith v. Ogle, 1 *Binn.* 174–5, that the conspiracy is the gist of the action, though it is still necessary to show some act done in execution of it. In that case it was held to lie against two defendants for conspiring falsely and maliciously, to accuse the plaintiff before the house of representatives, of extorting illegal fees and endeavouring to procure a person to make affidavit thereof, they knowing the contents to be false. In Mitchell v. Morrison and Penrod, 8 *Serg. & Rawle* 522, and 2 *Penns. Rep.* 126, the plaintiff, Mitchell, had obtained judgment against Morrison, and the defendant Penrod had, previously to the judgment, obtained from Morrison his effects, consisting of certificates of turnpike stock, and then had Morrison imprisoned under an execution, on a judgment before a justice of the peace, until he was discharged under the insolvent laws. It was held, that the action on the case for the conspiracy, was maintainable; ROGERS. J., says, although Mitchell could not collect his debt by *fieri facias* and levy, yet satisfaction might have been obtained, by compelling Morrison to assign for the benefit of his creditors; there was at least a chance of satisfaction, of which he ought not to be deprived by any fraudulent com-

[Mott v. Danforth.]

bination with his debtor. In Smith *v.* Tonstal, *Carth.* 3, 4, the
following case was adjudged on demurrer in B. R., and affirmed
in the house of lords. A. declared that he had obtained judgment
against J. S., for 100 pounds, and that 100 pounds more were due to
him for rent arrears; that he, intending to take out execution, and also,
to bring an action of debt for the rent in arrear, the said J. S., being
then possessed of goods and chattels sufficient to discharge the whole,
which being very well known to B, the defendant, he, by covin con-
spiring with the said J. S. to defeat him of his execution, and of reco-
vering the money for rent in arrear, procured the said J. S., to confess
a judgment for 160 pounds, to one J. N., and that he sued out execu-
tion on this feigned judgment, by virtue whereof, he seized all the
goods and chattels of the said J. S., which he eloigned to places un-
known, and converted to his own use, by reason whereof, the plaintiff
lost his debt; the action well lies. In Meredith *v.* Benning, 1 *Hen. &
Munf.* 585, there is a report of an action, brought in the district
court of Prince Edward county, in which the plaintiff had become
surety for P. M., a deputy sheriff, and had been obliged to pay
money for him, and he being about to sue and implead, and move
against him for indemnification, the defendant, not ignorant of the
premises, but craftily, &c., intending to defraud and injure the
plaintiff, did secretly and maliciously, take and carry away the
slaves, horses, cattle, household goods and chattels, of the said P. M.,
to parts unknown, and did keep, secrete, and conceal them; and
also, did then and there aid, assist, and counsel the said P. M., in
removing himself to parts unknown, to the end, that the plaintiff
might be prevented from recovering indemnification as aforesaid.
The jury gave a verdict for the plaintiff, which the court, on motion
for a new trial, confirmed; and the principle of the case seems to
be approved by the judges of the supreme court of appeals in a
subsequent chancery proceeding between the parties. In Adams
*v.* Page, 7 *Pick.* 542, it was held, that an action on the case for a
conspiracy, would lie against two or more, for an unlawful act
committed by them in concert, whereby the plaintiff suffered an
injury, even although there were no corrupt design to cheat and
defraud.

It would seem, that in most of the cases this remedy has been
employed for acts in the nature of malicious prosecution, or abuse
of legal proceedings; yet I perceive no reason why it should be
confined to such cases. Conspiracy comprehends any confederacy
to prejudice a third person, as where divers confederate to impove-
rish a third person; 1 *Hawk. P. C. Bk* 1 *c.* 72; or to defraud by
agreement among themselves, to accept, indorse and negotiate ficti-
tious bills. 1 *Leach, C. L.* 232. It seems clear, that a combina-
tion to commit a misdemeanor, or other act, prohibited by law,
constitutes this offence. 6 *Petersdorf's Abr.* 99. By 13 Eliz. ch. 5,
(in force here) all fraudulent gifts, grants, &c., of lands, tenements,

[Mott v. Danforth.]

&c., goods and chattels, to the purpose and intent, to delay, hinder, and defraud creditors, are declared, as against them, void and of no effect; and by sect. 3, the parties are subjected to a penalty.  A conveyance is fraudulent within this statute, even though a valuable consideration passes, if made with intent to hinder and defraud creditors. *Cowp.* 434.  As where a person, knowing there was a decree in chancery and sequestration, bought the defendant's house and goods, and gave a full sum for them, yet being with a manifest intent to defraud the creditor, it was held fraudulent and void. *Ibid.*  Nor is it necessary the plaintiff should have proceeded to judgment, or even brought suit, to bring the parties within the scope of the statute.  Information on 13 Eliz., plaintiff had brought debt against J. S., and attachment issued, and sheriff being ready to attach defendant by his goods, the defendant in disturbance of the execution of the process, showed a conveyance, by which he claimed them, and averred the fraud.  It was objected not to be within the statute, because it goes not in delay of execution, no judgment being, but only in delay of process.  The court held the contrary, by reason of the word, delay, for appearance is delayed. And *Periam* and *Rhodes* conceived that avowing such conveyance, though no suit is pending, is within the statute; but Anderson doubted. Pendleton *v.* Gunston, *Leon.* 47.

The circumstance that the debt was not payable at the time of the alleged fraud, is not in our opinion, a valid objection.  Although it was not then payable, yet it was on the eve of becoming so, and the plaintiff might be as much defeated of his debt by acts done just before he was about to proceed to recover it, as afterwards. The plaintiff's claim is founded, not so much on his debt being due, as on the injury done to him by the defendant's sweeping away that property belonging to the debtor, which he might have made available by legal proceedings for recovery of his debt; and if this could be done just before the debt became due, the fraud might be committed with impunity.  The question is one of fact for the jury, whether the acts were fraudulently done to defeat the plaintiff of his just debt, and whether he thereby lost the same.  Nor is it necessary the designs of the defendants should be levelled at the plaintiff alone; if intended against him and others in the same situation, it is rather an aggravation than an alleviation of the offence.

As to the damages, the measure is stated in Mitchell *v.* Penrod, 8 *Serg.* & *Rawle* 524, to be the value of the property withdrawn from the reach of the plaintiff by the assignments, and not the amount of the debt due to the plaintiff, and this appears to be the standard intended by the court below, in the present case, though the phraseology might have been more distinct.  It is not easy to judge what was the property assigned by Tarbox to the plaintiffs and withdrawn, or its value; much was transacted secretly between the parties, and it was for the jury to judge how far it consisted of

goods, notes or money.   The court, however, confine the plaintiff's claim to so much as was assigned and taken off by the parties, and the amount recovered was considerably below the plaintiff's debt.

Judgment affirmed.