WILLIAM P. DAY v. JAMES H. STEVENS and another.

*Partnership—Agreement to cultivate land—Landlord and Tenant.*

1. A partnership exists, where there is a common liability for losses and a common participation in the profits, as profits, after the payment of expenses.
2. A partnership, regulating the relations and interests of the members among themselves, is not the same as one formed and acting as such in its relations to others.
3. Where the landlord furnishes the land and teams and feed for them, and the tenant supplies the labor and provisions for the laborers, in the cultivation of a crop—the gross product to be divided between them, without any account of expenditures made by either; *Held*, that the agreement does not constitute an agricultural partnership.
4. The statute expressly provides that the lessor, by reason of his receiving a share of the crop, shall not be regarded as a partner of the lessee.
5. *Curtis* v. *Cash*, 84 N. C., 41, explained and corrected.

(*Mauney* v. *Coit*, 86 N. C., 463; *Curtis* v. *Cash*, 84 N. C., 41; *Reynolds* v. *Pool*, *Ib.*, 37 and 37 Amer. Rep., cited and commented on).

CIVIL ACTION tried at Spring Term, 1883, of DURHAM Superior Court, before *Gilmer, J.*

Verdict and judgment for plaintiff, appeal by defendants.

*Messrs. J. W. Graham* and *R. C. Strudwick*, for plaintiff.
*Mr. W. W. Fuller*, for defendants.

SMITH, C. J.  The complaint alleges that defendant entered into an agreement and formed an agricultural copartnership for working a farm (belonging to the defendant, James H. Stevens, and situated in Sampson county), for the year 1871, and that on October 8th of that year, they contracted with the plaintiff to sell and deliver to him, at Durham, the entire crop of tobacco raised thereon at the price of $16 for every one hundred pounds.

The tobacco not being delivered, the present action was instituted on December 21st, 1881, to recover compensation in damages for an alleged breach of obligation.

The defendants deny that any copartnership was constituted or intended to be constituted between them by their agreement for the cultivation of the land; that any such contract was made with the plaintiff; that the plaintiff was ready to comply with its terms if any such was made; or that any breach has been committed subjecting them to the plaintiff's demand for damages.

Several issues involving the different matters in controversy were prepared and submitted to the jury, of which it is only necessary, in the view which we have taken of the case, to set out the two following:

1. Were the defendants, James H. Stevens and James H. Burch, at the time mentioned in the complaint, partners, as farmers, manufacturers or merchants?

2. Was the contract mentioned in the second allegation of the complaint entered into between the plaintiff and defendants, in manner and form as therein stated?

Upon the trial evidence was introduced to show that early in the year 1881, the defendants entered into a mutual agreement for cultivating the farm, in which Stevens was to allow Burch to work the land and raise the crop, and to furnish him teams and feed for them to be so used, while Burch was to supply the required labor and provisions for the laborers to be employed, and each was to have an equal share of the produce made on the farm for that year.

The plaintiff contended, while the defendants denied, that this

agreement constituted a copartnership between the parties in their relations to others, or created an agency, in the exercise of which, each could dispose of the whole crop and bind the other by the contract; and the defendants further insisted that if by virtue of their agreement a copartnership did in law exist between them, the contract of sale made by Burch was not within the scope and purview of the association, so as to include the moiety of the product of the defendant, Stevens.

The court instructed the jury, that the effect of the agreement shown in evidence would be to create a copartnership for agricultural purposes, and that the contract of sale made by Burch was the contract of the firm, and equally binding on both. Under this charge the jury found both the issues in the affirmative.

The plaintiff's counsel undertook in his argument to separate these findings, and urged that inasmuch as the response to the second issue establishes the contract as actually entered into by both defendants, the error, if such there was, in the effect ascribed to the agreement between the defendants, is harmless, and the plaintiff would be entitled to judgment disregarding the finding upon the first issue.

We do not assent to this proposition, nor see the force of the reasoning resorted to in its support. The issues are not thus severable, but closely connected and dependent, the one upon the other. If partnership relations were formed, the contract of sale proved to have been made by Burch was in law the contract of both, and this result follows, though Stevens had no participation in making it, and never afterwards gave it his assent or approval. The existence of a partnership involves an agency in each member to act for all in the name of the firm, within the reasonable scope of the purposes and aims of the association. The instruction complained of tended to mislead the jury in rendering a verdict fixing the contract upon both, if in fact one of them was not a party to it in its inception or by a subsequent

ratification and no copartnership was formed under and by virtue of their agreement.

We are thus brought directly to the question, whether the construction put upon the contract for farming operations, that the defendants thereby became partners, is correct.

In our opinion the interpretation put upon the contract is not warranted by its terms, and the defendants were not by this association made copartners in their relations to others, and in this respect the charge is erroneous.

A copartnership is thus defined by Mr. Greenleaf: When there is a community of interest in the property, and also a community of interest in the profit, there is a partnership. If there is neither of these, there is no partnership. If one of these ingredients exist without the presence of the other, the general rule is that no partnership will be created between the parties themselves, if it would be contrary to their real intentions and objects. 2 Greenl. Evi., § 482.

Mr. Justice Story declares a partnership to be formed when a contract is entered into between two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a communion of the profits thereof between them. Story Part., § 2.

In a recent case we had occasion to speak of the essential elements in the constitution of a partnership, and used this language: A participation in the profits of the business, *as such,* involving also a common liability for losses, unless this be excluded by evidence to the contrary, as in the exceptional cases in which the profits are looked to, as a means only of ascertaining the compensation which under the contract is to be paid for the services of an employee, or some other specific obligation, many of which will be found in the note to the case of *Reynolds* v. *Pool,* 37 Amer. Rep., 609, seems to be the well settled rule for determining the existence of a copartnership in the relation

of its members to those who may deal with it and become mem-
bers.  *Mauney* v. *Coit*, 86 N. C., 463.

The prominent feature in such an association is a common lia-
bility for losses and a common participation in the results or
profits, as profits, ascertained after payment of expenses incurred
in prosecuting the joint business.

These ingredients are absent in the case before us.   The owner
of the land furnishes it and the horses and their feed required
in the cultivation—the defendant, Burch, supplies the labor and
work- and the gross product or produce is to be equally divided
between them without any account of expenditures made by
either.

Precisely such an arrangement, which should encourage farm-
ing without subjecting the owner of the farm to the debts incurred
by the person who cultivates it, seems to have been contemplated
and provided for in the act of April 10th, 1869, which declares:
"That no lessor of property, merely by reason that he is to
receive, as rent or compensation for its use, a share of the pro-
ceeds or net profits of the business in which it is employed or
any other uncertain consideration, shall be held a partner of the
lessee."    Bat. Rev., ch. 64, § 3.    Nor will the result be different
when to insure the cultivation the lessor furnishes and feeds the
team used by the tenant in making the crop.

We have had our attention directed to the language employed
in the opinion of *Curtis* v. *Cash*, 84 N. C., 41, in describing an
association, very similar to the present, as a copartnership between
the parties.   The exception then under consideration was to a
refusal of the court to charge that the title to the entire crop was
vested in the landlord, Veazey, and it was in answer to this sug-
gestion that the word was inadvertently used, as indicating the
relations of the parties, *inter sese*, and not of their partnership
relations to others.   The purpose was to show that whatever
may have been the antecedent relations between the lessor and
lessee, consequent on their contract for working the farm, the
crop having been divided, the title to the respective shares vested

in each in severalty, and the lessor committed a trespass in seizing the severed share of the tenant. But as the language employed in one aspect of the case was calculated to mislead, we avail ourselves of an early occasion, when it is pressed into service, to make the necessary explanation and correction. A partnership, as regulating the relations and interests of the members among themselves, is not the same as a partnership formed and acting as such in its relations to others. The latter may exist when held out to the world, and inviting persons to deal with it, when the association among the members may not be a partnership. It is needless to consider other exceptions, as our decision of this disposes of the appeal. There is error, and we award a *venire de novo*. This will be certified.

Error. *Venire de novo.*