WILLIAM E. WORTH v. KNICKERBOCKER TRUST COMPANY et als.

(Filed 20 October, 1909.)

1. Attachment—Illegal Trust—Actionable Wrong—Procedure.

On motion to discharge an attachment where it appeared in the affidavits filed that by flattering and deceptive statements on the part of the principal defendants, the plaintiff had been induced

to subscribe and partly pay for certain shares of corporate stock in a company formed to develop a certain water power; that before said subscription was obtained, and without the knowledge of plaintiff, said defendants had formed a voting trust forbidden by the law with the intent to dominate and control the management and business affairs of the company, and having thereby succeeded in obtaining such management and control, the said principal defendants wrongfully formed a combination and conspiracy by means of said illegal trust to exploit the enterprise for their own personal advantage and profit and to plaintiff's injury; that pursuant to such unlawful scheme, and with a view of acquiring the company's assets, said defendants in the management of said company designedly and systematically entered on a course of conduct by means of which said company was rendered insolvent and the value of plaintiff's stock and holdings therein was destroyed. *Held*, that an actionable wrong was stated against defendants and of a kind to uphold the validity of the order of attachment.

2. **Same.**

In attachment proceedings it is not now necessary that the damages sought should only be for a wrongful conversion of personal property or liquidated damages arising under a contract or limited or defined by some standard or data contained in the contract itself, but by the amendments of the Code of 1883, and subsequent statutes, as shown in Revisal, sec. 758, the remedy is also provided in actions for; subdiv. 3: "Any injury to real or personal property in consequence of negligence, fraud or other wrongful act"; subdiv. 4: "Any injury to the person by negligence or wrongful act."

3. **Same—Interpretation of Statutes.**

Revisal, chap. 68, sec. 2831, and subsec. 6, provides: That in the construction of all statutes, unless a contrary intent is manifest, the term "personal property" shall include moneys, goods, chattels, choses in action and evidence of debt, including all things capable of ownership not descendable to the heirs at law, and applying such construction, sec. 758, subdiv. 3, Revisal, above stated, authorizes the process of attachment in an action for an unlawful combination and conspiracy to injure plaintiff, and by means of which plaintiff's subscription and holdings in the corporation above indicated were rendered valueless.

APPEAL from *W. R. Allen, J.,* May Term, 1909, of NEW HANOVER.

Motion to discharge attachment and dismiss an action. It appeared, among other things, that plaintiff, making claim for damages against the Knickerbocker Trust Company, a nonresident, and other principal defendants, resident and nonresident, on 14 January, 1909, instituted his action against them and caused an attachment to be issued in same, and levied on debts and obligations due to said company from certain others who joined in the appeal in the cause. Some time after said attachment was issued and levied, the defendant, the Knickerbocker Trust Company, claiming to act under a special appearance,

moved to discharge the attachment, on the ground that no cause of action was stated against defendant company upon which an attachment could be issued. Afterwards publication in due form was made for nonresidents, and orders were made, on adjournment from time to time, allowing amendments of the affidavits, restricting the amount of property to be held under the writ and affecting the amount of bonds of plaintiff and defendant, etc.

At May Term of Superior Court of New Hanover County the defendant, the Knickerbocker Trust Company, still claiming to act under a special appearance, renewed its motion to dismiss the warrant of attachment and garnishment in the cause, on the ground that the plaintiff, in his affidavits, as amended, does not state facts sufficient to constitute a cause of action against defendant, or one in which an attachment could be issued, etc.

The court, having considered the matter, entered an order releasing all property levied on, over and above the amount of $50,000, and denied the motion as to that amount of the property; whereupon the trust company and other defendants excepted and appealed.

*E. K. Bryan* and *J. D. Bellamy* for plaintiff.
*Davis & Davis* for defendant.

HOKE, J., after stating the facts: The objections chiefly urged against the validity of the order of attachment were: 1. That no actionable wrong was stated against the defendants, or either of them. 2. No such actionable wrong was stated that an attachment would lie. But the Court is of opinion that neither position can be sustained. While the demand of plaintiff is set forth perhaps with some elaborateness of statement, the affidavits, as we interpret them, contain averments to the effect that, by means of flattering and deceptive statements on the part of the principal defendants, or some of them, plaintiff was induced to subscribe to an undertaking to develop certain water powers on the Yadkin River, in the counties of Anson and Richmond, and by means of a corporation to be formed, under the style and title of the Rockingham Power Company; that plaintiff, by said subscription, agreed to take over $50,000 of bonds of said company and $20,000 of preferred stock therein, for which he was to pay $45,000, and plaintiff had already paid $9,000 on said subscription; that before said subscription was obtained, and without plaintiff's knowledge or assent, three of the principal defendants had formed a voting trust, forbidden by the law (see *Shepherd v. Power Co.,* 150 N. C., 776), to dominate and control the management and business affairs of the company, and had succeeded in obtaining and

151—13

exercising such influence and control over the company's affairs, and that these three principal defendants wrongfully formed·a combination and conspiracy by means of this unlawful voting trust and otherwise to exploit the enterprise for their own personal advantage and profit and to the injury of plaintiff as subscriber in said company; and that the fourth principal defendant, the Knickerbocker Trust Company, had been a member of this unlawful combination and conspiracy originally, or had entered upon it afterwards, and knowingly participated in its plans and purposes; and that, after said subscription was obtained and the company was formed and said defendants were in the control and management of the affairs of same, the said defendants, in pursuance of their unlawful scheme and with a view and purpose of wrecking the Rockingham Power Company and acquiring its assets for their own gain and profit, and to the destruction of plaintiff's interest therein, systematically caused said company to enter into a number of improvident contracts with other companies owned and controlled by said defendants, designed and intended by defendants to effect their wrongful purpose, and had thereby succeeded in rendering said company insolvent. In this connection, though it may not be required, we consider it well to note that the Rockingham Power Company is also made a defendant; and in the complaint, which seems to have been considered at the hearing, and without objection, as an additional affidavit, there is an allegation to the effect that the officers and directors in control and management of the power company have all been selected and appointed by the voting trust referred to, and are only appointees and agents of the parties charged, dominated and controlled by them, and that an appeal to these officers and agents for relief by action on the part of the company would be without avail. There is no denial of these averments on the part of defendants, no opposing affidavits thus far having been filed by them; and, this being true, we are of opinion that an actionable wrong has been ·stated against the four principal defendants—an unlawful combination or conspiracy to injure plaintiff, and by means of which he has sustained legal damage. *Mott v. Danforth,* 6 Watts, 304; *Carew v. Rutherford,* 106 Mass., 1; *Cherry v. Powell,* 88 Ga., 629; *Webb v. Drake,* 52 L. A., 290. We are also of opinion that the action is one where an attachment lies.

Under the Code of 1868, as originally enacted, this provisional remedy was only allowed in actions on contract for recovery of money only, or in actions for wrongful conversion of personal property; and several decisions of the Court, construing the first clause of the statute, held that an attachment was only permis-

sible for breaches of contract involving the recovery of liquidated damages, or damages which could be limited and defined by some standard or data contained in the contract itself.· See *Price v. Cox,* 83 N. C., 261; *Wilson v. Mfg. Co.,* 88 N. C., 85. Shortly after these decisions were announced, the statute was amended so as to provide the remedy "for breach of contract (express or implied), wrongful conversion of personal property, any other injury to personal property in consequence of negligence, fraud or other wrongful act." Code 1883, sec. .347. The Legislature of 1893 (chapter 77) added "injuries to real property" to the section, and in 1901 there was another amendment, adding "or any injury to the person, caused by negligence or other wrongful act," making the law on the subject, as it now appears in the Revisal of 1905 (section 758), and allowing the remedy in—

"1. Breach of contract, express or implied.

"2. Wrongful conversion of personal property.

"3. Any other injury to real or personal property in consequence of negligence, fraud or other wrongful act.

"4.· Any injury to the person, caused by negligence or wrongful act."

Under this law, as amended, various decisions from time to time have sanctioned the use of the writ in actions to recover unliquidated damages, when the demand otherwise complied with the statutory requirements, and the present claim comes clearly within the terms of the third clause of section 758: "An injury to the personal property of another, in consequence of fraud or other wrongful act."

Some of the older cases are to the effect that this word, "property," both in public statutes and transactions and business affairs, *inter partes,* applies only to tangible property and would not include choses in actions or an interest or investment of the kind involved in this litigation, unless such signification was clearly required by the context or by the facts and circumstances of the special case. One of them (*Webb v. Bowler,* 50 N. C., 362) was an action where the validity of an attachment was in question, and it was held that the term "property" should be confined to tangible property, and that a false warranty or deceit in the sale of personal property was not an injury to the property of another, within the meaning of the statute.

Since these decisions were rendered, however, and probably in consequence of them, this restricted significance of the word "property," when used in statutes or the rule of interpretation on the question presented, has been altered by express enactment, and our chapter on the construction of statutes, as contained in the old Revised Code, ch. 108, sec. 2, subsec. 6, has been changed to read as follows:

"The word 'person' shall extend and be applied to bodies politic and corporate, as well as to individuals, unless the context clearly shows to the contrary. The words 'real property' shall be co-extensive with lands, tenements and hereditaments. The words 'personal property' shall include moneys, goods, chattels, choses in action and evidences of debt, including all things capable of ownership, not descendible to the heirs at law. The word 'property' shall include all property, both real and personal." A change which seems to have been made by the Code of 1883 and now appearing in Revisal 1905, sec. 2831, subsec. 6.

And in *Duckworth v. Mull,* 143 N. C., 461, a decision involving the meaning of this word, "property," as affecting the jurisdiction of justices of the peace in matters of tort, the Court, among other things, said: "In the business affairs and transactions of individuals and the construction of instruments which concern the devolution and transfer of property between them, this term, 'property,' has usually received a more restricted construction. It has been so in the decisions of our own Court; but in constitutions and public statutes, where the words permit and the spirit and intent of the law require, the word 'property' has frequently and more usually been accorded the broader significance which we have given it."

Construing the law, therefore, in the light of the present statute and the more recent and approved decisions, this action is clearly one in which the writ of attachment is allowed, the wrong alleged being an injury by which the plaintiff's interest and investment in the power company has been wrongfully destroyed or very greatly impaired. This view of a similar law has prevailed in other jurisdictions (*Paper Co. v. Scaring,* 54 Supreme Court N. Y., 237; *Weiler v. Schreeber,* 63 How. Pr., 491), and is clearly the proper construction of our statute on the subject.

There is no such disproportion between the reasonable estimate of plaintiff's demand and the amount of property retained or bond required as to justify or permit that the action of the lower court in reference to these matters should be disturbed; nor is there such repugnancy in the claim, as stated by plaintiff, as to seriously affect the validity of the attachment; and we are of opinion, on the controlling questions presented, that the plaintiff has stated a cause of action against the four principal defendants in which the writ of attachment lies, and that the judgment of his Honor below, denying defendants' motion to vacate the writ, should be

Affirmed.