## In re GASKILL et al.

### (District Court, D. Washington, E. D. May 2, 1904.)

### No. 309.

1. INSOLVENCY—TRUST FUND.

In dealing with the assets of insolvent debtors the courts will protect trust funds for the benefit of the beneficiaries when it is possible to trace such funds and segregate the same from the assets of the insolvent.

2. SALES IN BULK — STATUTES — COMPLIANCE — TRUST FUNDS — BANKRUPTCY —PREFERRED CLAIMS.

Where a sale of a stock of goods was made in bulk to buyers, who subsequently became bankrupt, and the seller fully complied with Laws Wash. 1901, p. 222, c. 109, § 1, requiring such sales to be accompanied by a list of the seller's creditors and payment of the price to be applied to their claims, a part of the price remaining unpaid at the time of the buyers' bankruptcy constituted a trust fund for the benefit of the seller's creditors, and was entitled to be paid in full as a preferred claim, less its pro rata share of the expenses of the bankruptcy proceedings, in so far as it represented a part of the stock remaining at the time of the bankruptcy, or was capable of being segregated from the other assets of the bankrupt.

In Bankruptcy. Heard on objections to claim of Mrs. Karen Fogh for balance of purchase price of a stock of merchandise sold in bulk.

The bankrupts, at the time of purchasing the goods, executed a contract in the nature of a chattel mortgage to secure deferred payments, which contract did not conform to the chattel mortgage law of the state, and because of such informalities was held to be void. Chapter 109, p. 222, Laws Wash. 1901; Supp. Ballinger's Ann. Codes & St. § 3102; Pierce's Code, § 5346—makes it the duty of the vendor at the time of disposing of a stock of merchandise in bulk to give to the vendee a sworn statement containing the names and addresses of all creditors to whom debts are due or to become due, with the amount of the vendor's liability to each, and that statute was complied with. Part of the purchase money being still unpaid at the time of the adjudication, and the trustee having received part of said stock of merchandise, and having disposed of the same for cash, Mrs. Fogh, the vendor, filed a claim for said balance, and petitioned the court to allow the same as a preferred claim to the extent of the proceeds from the trustee's sale of said stock. The trustee filed objections to the allowance of the preference claimed. Objections overruled, and claim allowed for the full amount as a general claim and as a preferred claim against the remainder of the proceeds of the particular goods which the bankrupts purchased from Mrs. Fogh, after paying therefrom a proportionate share of the costs of the bankruptcy proceedings.

Happy & Hindman, for Karen Fogh.
Danson & Huncke, for trustee.

HANFORD, District Judge (after stating the facts as above). The memorandum decision heretofore filed in this case only disposed

of the question raised as to a vendor's lien claimed by Mrs. Karen Fogh,. based upon the written contract executed by the bankrupts at the time of their purchase of her stock of merchandise, and reserved for further consideration the question whether the statute of 1901 (Laws Wash. 1901, p. 222, c. 109) created a trust for the benefit of her creditors; and since the filing of that decision a new claim has been presented in her behalf, supported by an affidavit of one of her attorneys, and the case has been again submitted for decision. The court adheres to its. former decision adverse to the lien so far as its validity depends upon contract, but the question as to a trust remains to be decided. In accordance with the principles of equity, the courts of this country, in dealing with estates of insolvent debtors, protect trust funds for the benefit of the beneficiaries, when it is possible to trace such funds and segregate the same from the assets of the insolvent. See The Spokane County and City Cases against the Receiver of The First National Bank of Spokane (C. C.) 61 Fed. 538, and 68 Fed. 979–983, 16 C. C. A. 81. In this case it is not disputed that Mrs. Fogh made a sale of her stock of merchandise in bulk to Gaskill & Sutton, and that in compliance with the statute of 1901 she gave them a sworn statement containing a list of her creditors, specifying the amounts due to each, etc., and that part. of the debts so listed are still unpaid; and the claim now under con-sideration is for the balance of the purchase price which Gaskill & Sutton agreed to pay for the stock of merchandise. It is also a fact in the case that part of the identical merchandise which Mrs. Fogh sold was on hand when the trustee took possession of the assets of Gaskill & Sutton, and the exact amount which he has received as proceeds from the sale thereof can be ascertained. The statute of 1901, above re-ferred to, was undoubtedly intended to provide for the security of creditors in cases where an entire stock of merchandise is sold in bulk. The Supreme Court of this state in the case of FitzHenry v. Munter & Johnson (Wash.) 74 Pac. 1003, has declared that the object of the statute is "to hold the goods of debtors, under such circumstances,. as a trust fund for the benefit of all creditors, and to hold the pur-chaser in possession as a trustee for such creditors." In that case the owner of a small stock of merchandise had commenced to dispose of it by an auction sale. After the most valuable goods had been sold in that manner, she accepted an offer of 50 per cent. of the invoice price for the remainder, and gave possession to the vendees. She then refused to give a list of her creditors, as the law requires in cases of sales in bulk, and payment of the purchase money was withheld. She then made a second sale for a nominal consideration to Fitz-Henry, who commenced an action against Munter & Johnson, the ven-dees in possession, to recover the amount which they had agreed to pay for the remnants of the stock. Creditors of the vendor who had ob-tained judgments against her and garnished Munter & Johnson were made parties by the consolidation of their actions with FitzHenry's. action. Munter & Johnson deposited the purchase price for which they were liable in the registry of the court, to be disbursed to the party or parties entitled thereto, as the court should adjudge. The vendor filed a disclaimer. Then a new party as assignee of other creditors.

-of the vendor intervened, claiming that the money should be distributed pro rata among all the creditors of the vendor. The superior court denied the right of the intervener to any share of the fund, and dismissed him from the case. That judgment was reversed by the Supreme Court, which decided, upon the trust-fund theory, that the money paid into the registry of the superior court should be distributed pro rata among all the creditors who were parties to the suit, including the intervener. In going to the extent of depriving judgment creditors of the advantage gained by their garnishment proceedings the Supreme Court necessarily gave full effect to the theory contained in the above excerpt from the opinion, and actually determined that by force of the statute the vendees became trustees for all the creditors of the vendor before they were garnished by some of the creditors. The words "such circumstances" in the opinion indicate a cautious intention to limit the effect of the decision to the case decided and cases involving similar circumstances. In the case which this court is now considering the circumstances are similar, except that the vendor and vendees observed the requirements of the statute at the time of the sale. That difference, however, to deprive the vendor's creditors of the benefit of the trust-fund theory, requires a construction of the statute which will make disobedience effective to create legal rights in favor of creditors unknown to the vendees, and leave the law ineffectual for the security of creditors who are listed and made known to the vendees in the manner prescribed. It is my opinion that to so construe the law would be unfair both to the creditors and the vendees. I hold, therefore, that the net proceeds of the goods formerly owned by Mrs. Fogh, now in the hands of the trustee, is a trust fund for the security of the balance due to her creditors, specified in the schedule which she gave to Gaskill & Sutton, and I direct that the amount of said fund be paid to them pro rata. By "net proceeds" I mean the amount realized by the trustee from the sale of said goods after deducting therefrom a proportionate share of the expenses of the bankruptcy proceedings payable out of the assets of the bankrupts.