RAYMOND, RESPONDENT, *v.* BLANCGRASS ET AL., APPELLANTS.

(No. 2,467.)

(Submitted January 14, 1908.    Decided February 1, 1908.)

[93 Pac. 648.]

*Conversion — Pleadings — Equity—Judgments—Husband and Wife—Separate Maintenance—Decree—Enforcement—Creditor's Bill.*

Pleadings—Construction.
1. In determining whether a complaint states a cause of action or entitles plaintiff to any relief, matters of form and allegations that are irrelevant or redundant will be disregarded, and if upon any view plaintiff is entitled to any relief, the pleading will be sustained.

Conversion—Complaint—Sufficiency.
2. A complaint which alleges that defendants, at a certain time and place combined and conspired together to hinder and defraud plaintiff in her rights in her husband's property; that, while she had an action pending against her husband for separate maintenance, they wrongfully took and carried away certain sheep then and there the property of her husband and in his possession, does not state a cause of action for conversion; for in such an action plaintiff must allege and prove a general or special ownership in the property and a right to the immediate possession of it at the time of the unlawful taking.

Equity—Decrees—Are Judgments.
3. Decrees in equity are judgments within the definition of section 1000, Code of Civil Procedure, and are, so far as they award a recovery of money, in nowise different from judgments at law.

Same—Decrees—Liens.
4. When properly docketed, a decree in equity becomes a lien upon the real estate of the debtor.

Same—Decrees—How Enforced.
5. A decree in equity directing the payment of money may be enforced by execution in the same manner as a judgment in an action at law.

Husband and Wife—Separate Maintenance—Decree—Enforcement.
6. Where a wife recovers a judgment against her husband for separate maintenance, she becomes his creditor for the amount adjudged due at the time, and for amounts accruing from month to month, occupies toward him the position of any other creditor, is entitled to the same relief in equity, if she seeks the satisfaction of her claim, and may maintain an action at law upon any ground available to any other creditor.

Torts—Creditors—Preventing Satisfaction of Claims.
7. A creditor who has been prevented from having satisfaction of his claim by the wrongful act of a third person, acting with or independently of the debtor, may maintain an action for damages against

such person for the value of the property put beyond the creditor's reach.

Same—Creditors—Special Injury.

8. A judgment creditor has no cause of action against one who has conspired to defeat his judgment, unless he can show some special injury different from that suffered by other creditors.

Husband and Wife—Separate Maintenance—Conversion—Complaint—Sufficiency.

9. The complaint of a wife, who had obtained a decree against her husband for separate maintenance, in an action to recover damages from third persons for conspiracy, alleged to have been entered into with a view to defeat any decree she might obtain, by removing and disposing of her husband's chattels, was insufficient where it did not appear therefrom that she had any special right in the property, and where the conversion occurred prior to the time she became her husband's creditor by the entry of the decree in the suit for separate maintenance.

Same—Creditors' Bills—Bills of Discovery.

10. A complaint which alleged that the defendants conspired together, pending a suit by plaintiff against her husband for separate maintenance, to defraud plaintiff of her rights in her husband's property and to render ineffective any decree she might obtain against him, but failed to state that the husband assisted in fraudulently disposing of or concealing it, or that plaintiff had acquired a lien on the chattels, or that a trust therein existed in her favor, had none of the attributes of a creditor's bill; nor was it good as a bill of discovery.

Creditors—Causes of Action in Favor of Debtor—Suit.

11. A creditor cannot, solely on the ground that he is a creditor, and that his debtor has no property other than an existing cause of action at law, bring suit upon such cause of action and obtain a judgment thereon as if he were the owner of it.

Execution—Sale—Personal Property—Statutes—Construction.

12. Section 1232, Code of Civil Procedure, relating to sheriff's sale under execution, provides that, when the purchaser of any "real" property, not capable of manual delivery, pays the purchase money, the officer making the sale must execute and deliver to him a certificate of sale. *Held*, that the word "real" in this section was used by mistake, and that the word "personal" should be substituted therefor.

Equity—Adequacy of Remedy at Law.

13. *Held*, that a wife who had obtained a judgment against her husband for separate maintenance had a plain, speedy and adequate remedy at law by execution against persons alleged to have fraudulently conspired to defeat any decrees she might obtain by disposing of the husband's property, and that therefore she could not sue in equity by way of a creditor's bill.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION in equity by Mary Raymond against John Blancgrass and others. From a judgment for plaintiff, John Blancgrass and Philip Chevalier appeal. Reversed.

*Mr. C. B. Nolan,* and *Mr. I. Parker Veazey, Jr.,* for Appellant Blancgrass.    *Mr. A. I. Loeb,* for Appellant Chevalier.

Before a judgment creditor can go into chancery and institute an action such as is brought in this case, provided this is a creditor's bill, the bill must show that all legal remedies have been exhausted. (*Roper* v. *McCook,* 7 Ala. 318; *Newman* v. *Willetts,* 52 Ill. 98; *Webster* v. *Clark,* 25 Me. 315; *Daskam* v. *Neff,* 79 Wis. 161, 47 N. W. 1132.)    Or else facts must be alleged excusing complainant's failure so to do.    (*Corey* v. *Greene,.* 51 Me. 114.)    Again, the complaint here, if intended as a creditor's bill, is fatally defective in not showing that a lien of some kind existed in favor of the complainant.    (14 Am. & Eng. Ency. of Law, 2d ed., p. 324; 5 Ency. of Pl. & Pr., p. 472.)

The complaint is likewise fatally defective if intended as a complaint for a conversion of the property.    In order to maintain this action, it was necessary that the pleadings should contain an allegation of a general or special ownership of the property in respondent at the time of the taking by the appellants. There is no such allegation of ownership.    (*Glass* v. *Basin etc. Mining Co.,* 31 Mont. 21, 77 Pac. 302; *Harrington* v. *Stronberg-Mullins Co.,* 29 Mont. 157, 74 Pac. 413; *Babcock* v. *Caldwell,* 22 Mont. 460, 56 Pac. 1081; *Reardon* v. *Patterson,* 19 Mont. 231, 41 Pac. 956; *Sawyer* v. *Robertson,* 11 Mont. 416, 28 Pac. 456; *Wetzel* v. *Power,* 5 Mont. 214, 2 Pac. 338.)

*Mr. E. A. Carleton,* for Respondent.

Is a cause of action in tort existing in favor of the insolvent judgment debtor an asset that may be reached by a judgment creditor by creditor's bill?    If the transaction out of which the tort arises is tainted with fraud as in this case, equity affords relief to a judgment creditor, and a creditor's bill is the proper remedy.    (*Donovan* v. *Finn,* 1 Hopk. Ch. 59, 14 Am. Dec. 531; *Hadden* v. *Spader,* 5 Johns. Ch. 280, and 20 Johns. 554; *Harper* v. *Clayton,* 84 Md. 346, 57 Am. St. Rep. 407, 35 Atl. 1083, 35 L. R. A. 211; *Green* v. *Keen,* 14 R. I. 388, 51 Am. Rep. 400; 12

Cyc. 27; *Henderson* v. *Hall,* 134 Ala. 455, 34 South. 840, 63 L. R. A. 673; Bispham on Principles of Equity, 6th ed., p. 652.)

In the following cases, the courts expressly hold that the bill lies to reach a chose in action for the wrongful conversion of, or injury to, the debtor's property: *German Nat. Bank* v. *First Nat. Bank,* 55 Neb. 86, 75 N. W. 531; *Hudson* v. *Plets,* 11 Paige Ch. 180; *Williams* v. *Bank* (Or.), 90 Pac. 1012; *Cincinnati* v. *Hafer,* 49 Ohio St. 60, 30 N. E. 197; *Beach* v. *Bestor,* 45 Ill. 341.

If a creditor's bill lies, is respondent required to secure a lien upon the chose in action before bringing her suit to subject it to the satisfaction of her claim? The answer to this is that the filing of the suit gives respondent all the lien that is required for the maintenance of her suit. (6 Pomeroy's Equity Jurisprudence, sec. 895; *Williams* v. *Commercial Nat. Bank* (Or.), 90 Pac. 1012; 12 Cyc. 61; *First Nat. Bank of Amsterdam* v. *Schuler,* 89 Hun, 303, 35 N. Y. Supp. 171; *Lansing v. Easton,* 7 Paige, 364.) That an equitable lien is created by the filing of the bill is the decision in *In re Pitts,* 9 Fed. 542; see, also, *Butler* v. *Jeffray,* 12 Ind. 504; *Gordon* v. *Lowell,* 21 Me. 251. Has plaintiff a remedy at law not exhausted? By "remedy at law" is meant an adequate remedy, since want of an adequate remedy at law "constitutes the very cradle of chancery." (*Wilson* v. *Harris,* 21 Mont. 400, 54 Pac. 46.)

Appellants contend that respondent has two distinct legal remedies, abundantly ample, and neither of which has been exhausted. The first is the remedy by execution, levying on and selling the sheep, or, in case of inability to do this, then by levying on and selling the chose in action itself. The property converted has disappeared, and the first remedy suggested would have been inadequate. The second remedy at law is the proceedings supplementary to execution. These proceedings, however, afford only a cumulative remedy. They are not exclusive. They do not oust equity of the jurisdiction which it formerly had. (*Ryan* v. *Maxey,* 14 Mont. 81, 35 Pac. 515; *Wilson* v. *Harris, supra;* 12 Cyc. 6; 6 Pomeroy's Equity Jur-

isprudence, secs. 872, 880, 893; Cooley on Torts, 652; *Rapp* v. *Whittier,* 113 Cal. 429, 45 Pac. 703; *Lewis* v. *Chamberlain,* 108 Cal. 525, 41 Pac. 413.)   Even had respondent invoked supplementary proceedings, she would have been unable to obtain the relief she desired.   Had appellants denied their guilt as to the conversion, as they did in their sworn answers, all the relief the court could give upon supplementary proceedings would be to have directed a suit to have been brought.   Respondent would then be in the same situation after those proceedings were had as she was before, and she would have gained only labor and expense for her trouble.   And even if appellants admitted their guilt, but denied the value of the property as claimed by respondent, no relief would have been possible.   So, in any event, a suit was inevitable.   Respondent avoided a multiplicity of suits, as the law directs, by bringing this suit in the first instance.

Lastly, may the complaint be sustained as an action on the case on account of the conspiracy to defeat plaintiff's judgment?   Were there no such action as the one we have been considering, undoubtedly an action on the case, or trespass, would lie.   It cannot be gainsaid that for the wrong done respondent there is not an adequate remedy.   Assuming, for the sake of argument, that a creditor's bill does not lie, we briefly consider the facts as alleged in the complaint and proved on the trial, as the record shows.   Viewing the case, then, as in form an action on the case, or trespass, the gist of the action, we take it, would be the recovery of damages for the wrongful conduct of the appellants.   Even then, we have an action in the nature of a bill in equity.

"The term 'action on the case' is usually understood to mean an action in form *ex delicto.*   It is founded on the simple justice and conscience of plaintiff's right to recover, and is in the nature of a bill in equity."   (6 Cyc., p. 684.)

"The action is an outgrowth of the principle that whenever the law gives a right or prohibits an injury, it will afford a remedy.   Hence, where there has been an injury, for which

none of the established forms of action will lie, an action on the case may be maintained." (6 Cyc., pp. 686, 687; see, also, *Findlay* v. *McAllister*, 113 U. S. 104, 5 Sup. Ct. 401, 28 L. Ed. 930.) Whether the allegations of the complaint shall be held to constitute one form of action or another is a question of little importance, compared with the question whether or not respondent has a remedy for the wrong done her and the damages she has sustained. All forms of action are abolished in this state, and law and equity are administered in the same action.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

It is alleged in the complaint herein that on April 29, 1904, the plaintiff, in an action brought for that purpose against her husband, Pierre Raymond, in the district court of Lewis and Clark county, obtained a decree providing for the separate maintenance of herself and her four minor children, which the decree awarded to her custody; that the decree directed the husband to pay to her monthly, and on the first day of every month thereafter during the joint lives of plaintiff and defendant, or until reconciliation should be effected, or until the further order of the court, the sum of $80; that it further directed that the defendant forthwith pay to her the sum of $50 to purchase necessary clothing for the plaintiff and her children, and also an additional sum of $48 to pay rent then due and owing by the plaintiff; that none of said sums have been paid by the defendant, or anyone in his behalf, but are long past due; and that the said defendant is wholly insolvent, has no other property within the jurisdiction of the court out of which the sums so awarded may be realized, and is, and has been since soon after the rendition of the decree, a nonresident of the state of Montana. It is then alleged as follows:

" (5) Plaintiff further avers: That no reconcilation has ever taken place between her and her said husband, Pierre Raymond, and there is no likelihood that any will ever occur between them. That ever since said decree of separate maintenance was en-

tered the said Pierre Raymond has utterly failed and neglected to contribute in any manner whatsoever to the support or maintenance of the plaintiff or her said minor children, nor has he communicated with them in any way, but has utterly abandoned this plaintiff and her said children.

"(6) That such proceedings were had in this court under and by virtue of said decree of separate maintenance; that the visible and known property of said Pierre Raymond, after he had departed without this state and had refused and failed to comply with said decree, was set apart by the court for the benefit of plaintiff and her said minor children in order to carry out and make effectual the provisions of said decree, but that the funds derived from the sale of said property of said Pierre Raymond have become almost exhausted, and will, in a very short period of time, be wholly consumed, thereby leaving plaintiff and her said minor children without any means of support, as this plaintiff is without any other property or means of her own.

"(7) Plaintiff avers that she brings this suit in behalf of herself and her said minor children to enable her to provide the means for her and their support and to secure to her and them the rights and benefits to which they are entitled under and by virtue of the aforesaid decree.

"(7a) Plaintiff further avers: That on or about March 10, 1904, at Lewis and Clark county, in the state of Montana, these defendants combined, connived, and conspired together to hinder, delay and defraud the plaintiff of her rights in the property of her said husband, and said defendants combined, connived, and conspired together to defeat the plaintiff in her said suit for separate maintenance against her husband, which was then pending in this court, as these defendants well knew, to make ineffectual any decree which she might obtain against her husband. And so it was that at the time and place aforesaid these defendants unlawfully and wrongfully took and carried away 150 head of sheep, of the particular kind known as wethers, then and there the property of the said Pierre Raymond and in

his possession, and which said wethers were of the value of $900, and converted and disposed of the same to their own use to the damage of plaintiff in the sum of $900.

"(8) That in the unlawful taking and converting of said 150 head of wethers, as aforesaid, the defendants have been guilty of fraud, oppression, and malice."

The prayer demands judgment for the sum of $900, with interest on this sum since March 10, 1904, and costs of suit, and that the amount, when recovered, be devoted by the court to the payment of the sums awarded plaintiff under the decree.

The defendants, in their answers, admit the rendition of the decree, as alleged, but put in issue all the other allegations of the complaint. At the commencement of the trial the defendants objected to the introduction of any evidence in support of the allegations of the complaint on the ground that they do not state a cause of action. The objection was overruled. At the close of plaintiff's case the defendants made separate motions for nonsuit, basing their motions upon the same ground upon which their objection was made. The motion of defendant Blaise was sustained, and the cause dismissed as to him. Those of the other defendants were denied. The latter declined to offer any evidence. The court submitted the case to the jury for two special findings, viz., whether the defendants converted the sheep, and what was their value at the time of the conversion. The jury having found that the defendants were guilty of the conversion, and that the sheep were of the value of $712.50, judgment was rendered and entered in favor of plaintiff for this sum, with interest and costs. The defendants Blancgrass and Chevalier have appealed from the judgment and an order denying them a new trial.

The question submitted for decision is whether the complaint states facts sufficient to warrant any relief. It is not clear from an inspection of it whether it attempts to state a cause of action for a conversion, or one for damages in the nature of an action on the case for the wrongful conduct of defendants, by which plaintiff has been prevented from having satisfaction, *pro tanto,*

of her judgment, or whether the plaintiff has attempted to invoke the aid of equity to reach an asset of her husband which cannot be reached by the ordinary process of execution.

The form in which an action is brought is of no consequence; nor does it matter that the complaint contains allegations not appropriate to the purpose sought to be attained. In determining the issue of law presented by a general demurrer to the complaint, or by any other appropriate method of raising the question—as here, by an objection to the admission of evidence at the trial, on the ground that the facts stated do not warrant any relief—matters of form will be disregarded, as well as allegations that are irrelevant or redundant; and if, upon any view, the plaintiff is entitled to relief, the pleading will be sustained. (*Donovan* v. *McDevitt*, 36 Mont. 61, 92 Pac. 49.)

We inquire, first, whether the complaint states a cause of action in conversion. In such an action the plaintiff must allege and prove a general or special ownership in the property and a right to the immediate possession of it at the time of the unlawful taking by defendant. (*Harrington* v. *Stromberg-Mullins Co.*, 29 Mont. 157, 74 Pac. 413; *Glass* v. *Basin & Bay State Min. Co.*, 31 Mont. 21, 77 Pac. 302.) The allegations of the complaint here do not meet this requirement. It is nowhere alleged that the plaintiff was the owner of the sheep at the time of the conversion, nor that she had any special property in them, nor that she was in possession of them. Indeed, the contrary appears, for it is alleged that "these defendants unlawfully and wrongfully took and carried away 150 head of sheep  *  *  *  then and there the property of the said Pierre Raymond, and in his possession," etc. The idea that plaintiff had any interest in them, even by possession, is thus excluded. Further, the conversion took place prior to the rendition of the decree, and it is not alleged that the cause of action arising out of it was set apart to the plaintiff under the terms of the decree, supposing this could have been effectively done.

Does it, then, state a cause of action for damages, upon the theory that, by the wrongful acts of the defendants, the plain-

tiff has been prevented, in part, from having satisfaction of her
judgment against her husband? Just here it may be observed
that the result of the action for separate maintenance was a
personal judgment against Raymond which could be enforced
by execution as any other judgment. "A judgment is the final
determination of the rights of the parties in an action or pro-
ceeding." (Code Civ. Proc., sec. 1000.) While decrees in equity
often extend to and cover matters entirely beyond the purview
of judgments at law, they are nevertheless judgments within
the definition of the statute, *supra,* and, so far as they award
in any case a recovery of money, they are in nowise different
from judgments at law. In legal effect there is no distinction.
(5 Ency. of Pl. & Pr. 489.) When properly docketed they be-
come liens upon the real estate of the debtor. They are enforced
by execution just as are judgments in legal actions. (Code Civ.
Proc., sec. 1214.) An order directing the payment of money is,
*pro hac vice,* a judgment, and may be enforced by execution.
(Code Civ. Proc., sec. 1825.) Even if the statute did not con-
tain this specific provision, the court would adopt the most ap-
propriate process. (Code Civ. Proc., sec. 205.) And it can-
not be doubted that the execution would be most effective and
appropriate.

The plaintiff, then, by the recovery of her judgment against
her husband, became his creditor for the amount adjudged to be
due her at the time of its entry, and also for the amounts ac-
cruing thereon from month to month, and occupied toward him
the position of any other creditor. At least she "stands in the
equity" of a creditor, and is entitled to the same relief in equity
when she seeks to have her claim satisfied. (*Twell* v. *Twell,* 6
Mont. 19, 9 Pac. 537; Bump on Fraudulent Conveyances, 3d
ed., 505; 14 Cyc. 298; 5 Ency. of Pl. & Pr. 489.) Such being
the case, she is also entitled to maintain an action at law upon
any ground which would be available to any other creditor.

The substantive statement in the complaint is that "said de-
fendants combined, connived, and conspired together to defeat
the plaintiff in her said suit,  *  *  *  which was then pending

in this court, as these defendants well knew, to make ineffectual any decree which she might obtain against her husband; and so it was that at the time and place aforesaid these defendants unlawfully, etc., * * * took and carried away, etc., * * * to the damage of plaintiff in the sum of $900.'' There can be no doubt of the soundness of the proposition that a creditor who has been prevented by the wrongful acts of a third person acting in connection with or independently of the debtor from having satisfaction of his claim, may have his action for damages against such person, the measure of recovery being the value of the property put beyond the creditor's reach. This is sustained both by reason and authority. But when it is sought to apply it to particular cases, difficulty is encountered.

In Pennsylvania the action may be maintained by any creditor, whether he has a lien upon the property eloigned or secreted or not, or whether he has reduced his claim to judgment. (*Penrod* v. *Mitchell,* 8 Serg. & R. (Pa.) 522; *Mott* v. *Danforth,* 6 Watts (Pa.), 304, 31 Am. Dec. 468; *Kelsey* v. *Murphy,* 26 Pa. 78.) In *Mott* v. *Danforth, supra,* the court seems to rely for support of its decision both upon cases adjudged at common law in England and upon the provisions of the statute of Elizabeth (13 Elizabeth, Chap. 5) relating to fraudulent conveyances and imposing penalties upon the guilty participants. But the rule of these cases is exceptional. Speaking generally, the courts of this country adhere to the rule that the action cannot be maintained unless the plaintiff, by judgment, execution, or attachment, has secured a lien upon the particular property, and thus has a vested right therein which has been rendered nugatory by the acts of the defendant, the plaintiff thereby having sustained a specific injury different from that suffered by other creditors. In other words, in order to warrant a recovery, the plaintiff must allege and show that he had a specific right to subject the particular property to the satisfaction of his judgment, and that the defendant, either alone or with others, has deprived him of this right. Otherwise a recovery would be had upon the plaintiff's bare chance to have satisfaction of a claim

which he possessed in common with other creditors—a wrong too remote, indefinite, and contingent to be the ground of an action. This is declared to be the rule by the supreme judicial court of Massachusetts in *Lamb* v. *Stone,* 11 Pick. (Mass.) 526, where it is said:

"The plaintiff complained of the fraud of the defendant in purchasing the property of his absconding debtor in order to aid and abet him in the fraudulent purpose of evading the payment of his debt. The court ask, What damage has the plaintiff sustained by the transfer of his debtor's property? He has lost no lien, for he had none. No attachment has been defeated, for none had been made. He has not lost the custody of his debtor's body, for he had not arrested him. He has not been prevented from attaching the property, or arresting the body of his debtor, for he had never procured any writ of attachment against him. He has lost no claim upon, or interest in, the property, for he never acquired either. The most that can be said is that he intended to attach the property, and the wrongful act of the defendant has prevented him from executing this intention. * * * On the whole, it does not appear that the tort of the defendant caused any damage to the plaintiff. But, even if so, yet it is too remote, indefinite, and contingent to be the ground of an action." (See, also, *Wellington* v. *Small,* 3 Cush. (Mass.) 145, 50 Am. Dec. 719; *Bradley* v. *Fuller,* 118 Mass. 239.)

In the early case of *Smith* v. *Blake,* 1 Day, 258, the supreme court of Connecticut announced the same view and stated, as a further objection to the maintenance of such an action, that the result would be that the defendant would be subject to a like action by every one of the creditors of the insolvent debtor, and thus be liable to pay many times the value of the property, whereas the only penalty imposed upon him by law is that he shall reap no benefit by his fraudulent conduct. The doctrine of this case is reaffirmed by the same court in the case of *Hatstat* v. *Blakeslee,* 41 Conn. 301, where the case of *Smith* v. *Blake* is cited with approval.

In *Moody* v. *Burton,* 27 Me. 427, 46 Am. Dec. 612, the supreme judicial court of Maine had before it the question whether a judgment creditor, with execution returned unsatisfied, could maintain an action against a third person who had conspired with the judgment debtor to put his property beyond the reach of his creditors. It was held that the action could not be maintained, because the plaintiff did not show a right to, or interest in, the property superior to that of any other creditor, and hence that the injury was too remote to sustain a judgment; and further, because, since the creditor could show no specific interest in, or lien upon, the property, but only a bare chance to reach it, there was no standard by which the injury could be measured. The same conclusion was reached in *Klous* v. *Hennessey,* 13 R. I. 332, the court holding that the fundamental reason why the action could not be maintained is that the "damage, which is the gist of the action, is too remote, uncertain, and contingent, inasmuch as the creditor has not an assured right, but simply a chance of securing his claim by attachment or levy, which he may not succeed in improving."

In *Hall* v. *Eaton,* 25 Vt. 458, the right to maintain the action was denied, the court basing its decision upon *Lamb* v. *Stone* and *Moody* v. *Burton, supra.*

The decisions of the New York court of appeals are conflicting. In *Braem* v. *Merchants' Bank,* 127 N. Y. 508, 28 N. E. 597, the right to maintain the action is denied, the court apparently distinguishing that case upon its facts from the earlier case of *Quinby* v. *Strauss,* 90 N. Y. 664, wherein it was held that the action would lie in favor of a judgment creditor. The two cases seem, on principle, to be directly in conflict.

In *Adler* v. *Fenton,* 24 How. (U. S.) 407, 16 L. Ed. 696, the supreme court of the United States refused to sustain an action by a general creditor against the fraudulent grantees of the debtor, repudiating the doctrine of the Pennsylvania cases. In the case of *Findley* v. *McAllister,* 113 U. S. 104, 5 Sup. Ct. 401, 28 L. Ed. 930, the general rule that in order to sustain the action the plaintiff must show a specific interest in the fund or prop-

erty sought to be applied to the satisfaction of his judgment was recognized, the court citing and distinguishing *Adler* v. *Fenton, supra.* The same rule has been recognized by the supreme court of Wisconsin. (*Field* v. *Siegel,* 99 Wis. 605, 75 N. W. 397.) A collection of cases may be found in the notes to this case, reported in 47 L. R. A. 433.

It thus appears that under the rule established by the great weight of authority in this country, although it is made clearly to appear that the defendant has willfully become a party to a conspiracy to defeat the judgment of the creditor, such a creditor has no cause of action against him, unless he can show that he has suffered some special injury different from that suffered by the other creditors.

Applying the rule announced in the cases cited to the allegations of the complaint, we find that they are not sufficient to sustain the action, in that it does not appear therefrom, even by inference, that the plaintiff had any special right in the property alleged to have been fraudulently taken from the possession of her husband by the defendants. At the time the conversion occurred the suit was pending. She had no judgment, and therefore, at that time, was not a creditor of her husband, for the relation of creditor was fixed by the entry of the decree in the separate maintenance action. Prior to that time her husband was not her debtor, and in this respect she occupied a different relation toward him from that of any other creditor.

Counsel for respondent contends, however, that the complaint is in form and substance a creditor's bill, and in support of this contention among other cases cites *Twell* v. *Twell,* 6 Mont. 19, 9 Pac. 537, *Ryan* v. *Spieth,* 18 Mont. 45, 44 Pac. 403, and *Wilson* v. *Harris,* 21 Mont. 374, 54 Pac. 46. But none of these cases are in point, nor are any of the others cited. It does not appear that Raymond, the debtor, had anything to do with the conversion of the sheep by the defendants, so that he might be said to have fraudulently disposed of or concealed them, and the purpose of the action is to annul the fraudulent conveyance

which stands as an obstruction in the way of plaintiff's execution. The complaint has none of the attributes of a bill to reach property fraudulently conveyed. If it were otherwise sufficient for this purpose, it would fail, for the reason that it does not show that the plaintiff has acquired a lien on the property by attachment or execution, or that there is a trust therein in her favor. (*Wilson* v. *Harris, supra; Westheimer* v. *Goodkind,* 24 Mont. 90, 60 Pac. 813; *Wyman* v. *Jensen,* 26 Mont. 227, 67 Pac. 114.) Nor has it any of the attributes of a bill of discovery, for that it appears expressly upon the face of it that the relations between the parties and their attitude toward the subject matter of the controversy are clearly understood and no discovery is necessary. In fact, the manifest purpose of the action is to secure a judgment in favor of the plaintiff upon a cause of action for a conversion by the defendants existing in favor of her husband, the sole ground of her right to do so being that she is a creditor.

Without pausing to discuss the features of that character of a creditor's bill, the purpose of which is to reach assets not liable to execution, it may be remarked that a creditor cannot, solely on the ground that he is a creditor, and that his debtor has no property other than an existing cause of action at law, bring suit upon such cause of action and obtain a judgment thereon as if he were the owner of it, and justify the action on the theory that he is proceeding by a creditor's bill. To hold the contrary would be equivalent to laying down the doctrine that, because an insolvent debtor does not bring action to rectify a wrong done him, his creditor may do so, and not only so, but may, in his own right, bring the wrongdoer to book by going into a forum and adopting a form of action wherein and whereby the wrongdoer is deprived of a trial according to the fundamental law requiring his case to be submitted to a jury according to the forms of law.

Now, it is insisted by counsel for respondent and conceded by counsel for appellant, that the legal cause of action existing in favor of Raymond which the plaintiff seeks to reach is prop-

erty which may be subjected to the satisfaction, *pro tanto,* of plaintiff's judgment. If this is so, and there is every reason why it should be so under the statute (Civ. Code, sec. 4662), plaintiff had a plain, speedy, and adequate remedy at law, and therefore could not call equity to her aid until she had exhausted it.

The statutes of Montana relating to the kinds of property that may be taken on execution are very broad, and under them any species of property may be seized, sold, and the proceeds thereof applied to the satisfaction of the judgment. The procedure which would have given plaintiff all the relief to which she was entitled is found in the following sections of the Code of Civil Procedure:

"Sec. 1218. All goods, chattels, moneys, and other property, both real and personal, or any interest therein of the judgment debtor, not exempt by law, and all property and rights of property seized and held under attachment in the action, are liable to execution. Shares and interests in any corporation, or company, and debts and credits, and all other property, both real and personal, or any interest in either real or personal property, and all other property not capable of manual delivery, may be attached on execution, in like manner as upon writs of attachment. Gold-dust must be returned by the officer as so much money collected, at its current value, without exposing the same to sale. Until a levy, property is not affected by the execution."

"Sec. 1224. The sheriff must execute the writ against the property of the judgment debtor, by levying on a sufficient amount of property, if there be sufficient, collecting or selling the things in action, and selling the other property, and paying to the plaintiff or his attorney so much of the proceeds as will satisfy the judgment. Any excess in the proceeds over the judgment and accruing costs, must be returned to the judgment debtor, unless otherwise directed by the judgment or order of the court. When there is more property of the judgment debtor than is sufficient to satisfy the judgment and accruing costs within the view of the sheriff, he must levy only on such part

of the property as the judgment debtor may indicate, if the property indicated be amply sufficient to satisfy the judgment and costs.''

"Sec. 1232. When the purchaser of any *real* property not capable of manual delivery pays the purchase money, the officer making the sale must execute and deliver to the purchaser a certificate of sale. Such certificate conveys to the purchaser all the right which the debtor had in such property on the day the execution or attachment was levied.''

Under section 1218 all property of every description, tangible and intangible, including debts, credits, and all other property not capable of manual delivery, may be attached on execution in like manner as upon writs of attachment. By reference to section 895 of the Code of Civil Procedure, as amended by the Act of 1899 (Laws 1899, p. 139), debts, credits, and other personal property not capable of manual delivery are attached by serving upon the debtor, or person responsible, a copy of the writ and the notice therein directed. Under section 1224, *supra,* the sheriff must collect or sell the things in action, and also sell the other property seized, until sufficient funds are realized to pay the judgment. It will be noticed that in section 1232, *supra,* which contains directions to the sheriff as to the delivery of a certificate in case of a sale of property not capable of manual delivery, the word "real" qualifies the term "property." When we examine all the provisions of the chapter together, it becomes apparent that the use of this term is a mistake, and that the term "personal" must be substituted for it. Section 1233 and the following sections direct the sheriff relative to sales of real estate and provide for redemption. If the word "real" be retained in section 1232, this section becomes inconsistent with the following sections, or else can be assigned no intelligent meaning. Real estate is never capable of manual delivery. If, however, the position of this section in the chapter be considered, and it be held to apply to the subject with which it evidently deals, it is clear that the substitution should be made, for thus all the sections are made consistent, and we have

a provision which prescribes what shall be done in case of sales of personal property not capable of manual delivery, whereas, otherwise, we should find no such provision. Besides, section 698 of the Code of Civil Procedure of California, pertaining to the same subject, of which our section is a literal copy, except in the particular just mentioned, uses the word "personal," giving the section the meaning and application which the legislature of that state, and of our own state as well, evidently intended it to have. Making the proper substitution in this section, and considering all the sections together, it is entirely clear that the plaintiff could have reached the asset of her husband sought to be reached in this action by the process of execution, and hence that the necessity to go into a court of equity to obtain aid did not exist. For, according to the contention of her counsel, the very purpose of her action was to reach an asset that she could not reach by this process. Nor is it any hardship upon plaintiff that she is compelled to pursue the remedy thus pointed out. This course is required of every creditor, and equity will aid only when an adequate remedy is not found in the provisions of law. The want of an adequate remedy at law "constitutes the very cradle of equity." (*Wilson v. Harris, supra.*)

The remedy pointed out is adequate. The execution could have been levied as easily as a service of summons could have been made in this case. If no other purchaser could have been found, the plaintiff could have become the purchaser herself, and thus have become vested with title to the cause of action, whereupon, if defendants had refused payment without suit, she could with legal propriety have sued in her own name. It is no answer to this reasoning to say that this course would have been somewhat less expeditious than the one pursued by the plaintiff. If the asset must be regarded as property to be subjected to the payment of debts, it must follow as a necessary conclusion that the way pointed out by the statute to reach it must be pursued.

Since the complaint does not state a cause of action from any point of view, the judgment and order must be reversed, and it is so ordered.

*Reversed*

Mr. JUSTICE HOLLOWAY and Mr. JUSTICE SMITH concur.

