WHEELER & MOTTER MERC. CO., APPELLANT, *v.* MOON, RESPONDENT.

(No. 3,388.)

(Submitted May 27, 1914.   Decided June 15, 1914.)

[141 Pac. 665.]

*Sales—Bulk Sales Law—Constitution—Police Power—Garnishment—Creditors' Suit — Complaint — Sufficiency — Mingling Goods—Effect.*

Bulk Sales Law—Constitutionality.
1.   The bulk sales law (Rev. Codes, secs. 6131–6135), prohibiting sales of merchandise in bulk without the seller delivering to the buyer a sworn statement of the names and addresses of all the seller's creditors and declaring that, if the buyer does not apply the purchase price to the payment *pro rata* of the *bona fide* claims of creditors, the sale shall be fraudulent and void, *held* a proper exercise of the state's police power, and not unconstitutional, as violative of the equal protection or due process clauses of the Fourteenth Amendment to the Constitution of the United States.

[As to constitutionality of statutes prohibiting sales of merchandise in bulk, see note in Ann. Cas. 1912C, 706.]

Constitution—Statutes—Duty of Courts.
2.   No Act of the legislature should be declared invalid unless the conflict between its provisions and the Constitution is plainly apparent.

Same—Policy of Law—Matter for Legislature.
3.   The policy of the law is a matter of legislative control and does not concern the courts.

Attachment—Chattels in Possession of Third Person—Garnishment.
4.   Since the enactment of H. B. No. 66 (Laws 1899, p. 139), amending section 895, Code of Civil Procedure (now sec. 6662, Rev. Codes), the only method of attaching personal property in the possession of a third person has been by garnishment process, *i. e.,* by leaving with such person a copy of the writ of attachment and a notice that the property is attached by virtue of the writ.

Bulk Sales Law—Creditors' Suit—Garnishment.
5.   *Held,* under sections 6662 and 6821, Revised Codes, the latter of which provides that all property of a corporation, both real and personal and whether capable of manual delivery or not, may be attached on execution, in like manner as upon writs of attachment, that where plaintiff, after recovery of judgment against a mercantile corporation which had theretofore transferred its entire stock of merchandise in bulk to defendant without complying with the provisions of the bulk sales law, had served a copy of a writ of execution on defendant, together with a notice that any property in his possession or under his control belonging to the judgment debtor, was attached pursuant to the writ, a specific lien was created and fastened upon the property in favor of plaintiff sufficient to enable it to prosecute a creditors' bill against the purchaser.

Complaint—Demurrer—Matters of Form to be Disregarded.
    6.   In determining a general demurrer to a complaint, matters of form as well as allegations not appropriate to the purpose sought to be attained will be disregarded; and if, upon any view, the plaintiff is entitled to relief, the pleading must be sustained.

Bulk Sales Law—Violation—Buyer a Trustee for Creditor.
    7.   The failure of a buyer of a stock of merchandise in bulk to comply with the provisions of the bulk sales law converts him into a trustee of the property bought, to the extent of the creditor's claim against the seller, and in case the purchased goods have been mingled with those of the buyer so as to destroy their identity, or converted into cash, equity will hold him for their value.

Complaint—Inferences—Sufficiency.
    8.   Whatever is necessarily implied in, or to be inferred from, a complaint, is to be deemed directly alleged.

Same—Ambiguity—General Demurrer.
    9.   Ambiguity in a complaint cannot be reached by a general demurrer.

*Appeal from District Court, Park County; Albert P. Stark, Judge.*

ACTION by the Wheeler & Motter Mercantile Company against L. T. Moon, garnishee. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

*Mr. Frank Arnold,* for Appellant, submitted a brief as well as one in reply to that of Respondent, and argued the cause orally.

*Mr. Fred. L. Gibson,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Prior to March 15, 1911, the Hefferlin Mercantile Company, a domestic corporation, was engaged in the general retail mercantile business at Livingston. About July 10, 1911, the Wheeler & Motter Mercantile Company secured a judgment in the district court of Park county against the Hefferlin Mercantile Company and W. N. and O. M. Hefferlin, and execution was issued thereon, but returned unsatisfied. Thereafter an *alias* execution was issued and served upon L. T. Moon as garnishee, who answered that he did not owe the judgment debtors

anything, and did not have in his possession or under his control any property belonging to them. Thereupon this action was instituted by the judgment creditor against Moon. In addition to the foregoing facts, the complaint charges that about March 15, 1911, the Hefferlin Mercantile Company sold its entire stock of merchandise *in bulk* to defendant Moon and to Anderson & Co. for an amount in excess of $5,000; that the purchasers immediately paid for the goods and took possession; that before paying the purchase price, defendant, Moon, did not demand, obtain or receive from the seller, its officers, or agent a verified statement containing the names of the creditors of the seller, "and said Hefferlin Mercantile Company did not furnish a written statement sworn to by said Hefferlin Mercantile Company, or any of its officers, or its managing agent, as provided in sections 6131, 6132, 6133, 6134 and 6135 of the Civil Code, Revised Codes of Montana 1907, of the names and addresses of all the creditors of said Hefferlin Mercantile Company to whom said Hefferlin Mercantile Company was then and there and at the time of the sale indebted, together with the amount of the indebtedness then and there due and owing or to become due or owing from said Hefferlin Mercantile Company to such creditors"; that defendant. Moon. did not pay, or see to it that the purchase money was applied to the payment of, the *bona fide* creditors of said Hefferlin Mercantile Company, share and share alike, or at all; that at the time of the purchase of said stock of goods by defendant, Moon, plaintiff was, and for a long time prior thereto had been, a *bona fide* creditor of said Hefferlin Mercantile Company, on account of goods, wares and merchandise sold and delivered to said company for conducting its business; that at the time of said sale the value of the goods purchased by defendant Moon was greatly in excess of plaintiff's claim; that at the time of said sale each of said judgment debtors was insolvent; and that by reason of these facts such sale by the Hefferlin Mercantile Company to Moon was fraudulent and void. It is further alleged that no part of plaintiff's claim has ever been paid. The prayer of the complaint is that the pretended sale be set aside, and that defend-

ant. Moon be required to account to plaintiff for the value of the property so pretended to have been purchased by him, or the proceeds thereof if any of said goods have been sold, or so much thereof as may be necessary to satisfy plaintiff's judgment, and for general relief. To this complaint a general demurrer was interposed and sustained, in an order in which the court indicated that the reason for its ruling was that the Act known as the "Bulk Sales Law," is unconstitutional. Plaintiff, declining to plead further, suffered judgment to be entered against it, and appealed.

Our bulk sales law is Chapter 145, Laws of 1907, incorporated [1] in the revision as sections 6131, 6132, 6133, 6134, and 6135 of the Revised Codes. Section 6131 provides: "It shall be the duty of every person who shall bargain for, or purchase any stock of goods, wares or merchandise in bulk, for cash, or on credit, before paying to the vendor, or his agent or representative or delivering to the vendor, or his agent, any part of the purchase price thereof, or any promissory note or other evidence therefor, to demand of and receive from such vendor, or agent, or if the vendor or agent be a corporation, then from the president, vice-president, secretary or managing agent of such corporation, a written statement, sworn to substantially as hereinafter provided, of the names and addresses of all the creditors of said vendor, to whom said vendor may be indebted, together with the amount of indebtedness due or owing, and to become due and owing, by said vendor to each of such creditors; and it shall be the duty of said vendor, or agent, to furnish said statement, which shall be verified by an oath to the following effect." And this is followed by a form of verification. Section 6132 provides that if the purchaser at such bulk sale shall pay for the goods without having demanded and received the statement mentioned in the preceding section "and without paying, or seeing to it that the purchase money of the said property is applied to the payment of the *bona fide* claim of the creditors of the vendor as shown upon such verified statement, share and share alike, such sale, or transfer shall be fraudulent and void." Section 6133 provides a penalty for making a false

statement.   Section 6134 defines a bulk sale as follows: "A sale and transfer in bulk in contemplation of this Act, shall be deemed to be any sale or transfer of an entire stock of goods, wares or merchandise out of the usual or ordinary course of business or trade of the vendor, or attempted to be sold or conveyed; *provided,* however, that if such vendor produces and delivers a written waiver of the provisions of this Act from his creditors as shown by such verified statements, then in that case, the provisions of this Act shall not apply."   And section 6135 contains this exemption: "Nothing in this Act contained shall apply to executors, administrators, receivers, or any public officer acting under judicial process."

Prior to 1900 an Act of this character was practically unknown in the United States, but to-day nearly every state in the Union, as well as the District of Columbia, has one.   These statutes differ somewhat in their phraseology, and vary in degree as to their stringency, but they all proceed upon the same general theory, are aimed at the same evil, and are so nearly alike in their provisions as to warrant the assumption that some efforts have been expended toward procuring uniform legislation upon the subject.   The New York, Ohio, and Illinois Acts were declared unconstitutional, generally upon the grounds that the subject matter of the legislation is not within the police power; that these Acts make an unwarranted classification, and therefore deny to certain persons the equal protection of the law, and deprive the owner of his goods without due process of law, in contravention of the guaranties of the Fourteenth Amendment to the Constitution of the United States, or like provisions found in the state Constitutions.   (*Wright* v. *Hart,* 182 N. Y. 330, 3 Ann. Cas. 263, 2 L. R. A. (n. s.) 338, 75 N. E. 404; *Miller* v. *Crawford,* 70 Ohio St. 207, 1 Ann. Cas. 558, 71 N. E. 631; *Off & Co.* v. *Morehead,* 235 Ill. 40, 126 Am. St. Rep. 184, 14 Ann. Cas. 435, 20 L. R. A. (n. s.) 167, 85 N. E. 264.) The Utah Act of 1901 (Laws 1901, Chap. 67) made no exemption of sales conducted by public officers or persons acting under court orders, and was held invalid (*Block* v. *Schwartz,* 27 Utah, 387, 101 Am. St. Rep. 971, 1 Ann. Cas. 550, 65 L. R. A. 308, 76

Pac. 22), while the Indiana Act of 1903 (Laws 1903, Chap. 153) applied only to creditors who furnished merchandise or money to carry on the business, and for that reason was held unconstitutional. (*McKinster* v. *Sager,* 163 Ind. 671, 106 Am. St. Rep. 268, 68 L. R. A. 13, 72 N. E. 854.)

Statutes similar to our own have been upheld as valid legislative enactments in Washington, Massachusetts, Connecticut, Georgia, Oklahoma, Michigan, Tennessee, Minnesota, Nebraska, and in the federal court. (*McDaniels* v. *Connelly Shoe Co.,* 30 Wash. 549, 94 Am. St. Rep. 889, 60 L. R. A. 947, 71 Pac. 37; *Squire & Co.* v. *Tellier,* 185 Mass. 18, 102 Am. St. Rep. 322, 69 N. E. 312; *Walp* v. *Mooar,* 76 Conn. 515, 57 Atl. 277; *Young* v. *Lemieux,* 79 Conn. 434, 129 Am. St. Rep. 452, 8 Ann. Cas. 452, 20 L. R. A. (n. s.) 160, 65 Atl. 436; *Jaques & Tinsley Co.* v. *Carstarphen Warehouse Co.,* 131 Ga. 1, 62 S. E. 82; *Williams* v. *Bank,* 15 Okl. 477, 6 Ann. Cas. 970, 2 L. R. A. (n. s.) 334, 82 Pac. 496; *Spurr* v. *Travis,* 145 Mich. 721, 116 Am. St. Rep. 330, 9 Ann. Cas. 250, 108 N. W. 1090; *Musselman Grocer Co.* v. *Kidd, Dater & Price Co.,* 151 Mich. 478, 115 N. W. 409; *Neas* v. *Borches,* 109 Tenn. 398, 97 Am. St. Rep. 851, 71 S. W. 50; *Thorpe* v. *Pennock Mercantile Co.,* 99 Minn. 22, 9 Ann. Cas. 229, 108 N. W. 940; *Appel Mercantile Co.* v. *Barker,* 92 Neb. 669, 138 N. W. 1133; *In re Gaskill* (D. C.), 130 Fed. 235.)

*Young* v. *Lemieux,* above, was removed to the supreme court of the United States, and there the contentions that these statutes violate the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States were swept aside as without merit. That the subject matter of such Acts is well within the police power of the states was declared by the supreme court to be too plain to require discussion. The position of the supreme court of Connecticut that the Connecticut Act does not impose such restrictions upon transactions in merchandise in bulk as amount to unreasonable deprivation of property was sustained. The opinion of the court is summarized in the concluding paragraph, as follows: "As the subject matter to which the statute relates was clearly within the police powers of the state, the statute cannot be held to be re-

pugnant to the due process clause of the Fourteenth Amendment, because of the nature or character of the regulations which the statute embodies, unless it clearly appears that those regulations are so beyond all reasonable relation to the subject to which they are applied as to amount to mere usurpation of power.    (*Booth v. Illinois*, 184 U. S. 425, 46 L. Ed. 623, 22 Sup. Ct. Rep. 425.) This, we think, is clearly not the case.    So, also, as the statute makes a classification .based upon a reasonable distinction, and one which, as we have seen, has been generally applied in the exertion of the police power over the subject, there is no foundation for the proposition that the result of the enforcement of the statute will be to deny the equal protection of the laws.'' (*Lemieux* v. *Young,* 211 U. S. 489, 53 L. Ed. 295, 29 Sup. Ct. Rep. 174.)    A year later the case of *Musselman Grocer Co.* v. *Kidd, Dater & Price Co.,* above, was likewise removed to the same court, and, upon the authority of *Lemieux Case,* the Michigan statute was also upheld.    (*Kidd, Dater & Price Co.* v. *Musselman Grocer Co.,* 217 U. S. 461, 54 L. Ed. 839, 30 Sup. Ct. Rep. 606.)

The difference between our statute and the Utah and Indiana Acts is so marked that the decisions from the courts of those states are not precedents here; while, in our opinion, every vestige of argument advanced in the opinions from the Ohio, New York and Illinois courts is destroyed by the better reasoning found in the opinions of the courts which uphold similar laws. An Act of the legislature ought not to be treated lightly, and [2]   no measure should be declared invalid unless the conflict between its provisions and the Constitution is plainly apparent. The purpose of this Act is manifest.    It does not apply to the merchant who is out of debt, and it works no hardships upon the one who is in debt.    The sale of his entire stock in bulk is not prohibited, but that his just debts be paid is insisted upon. The provisions of our Constitution were not intended to cloak the fraudulent acts of one who seeks by an overnight transaction to defeat the claims of confiding creditors.    So far as the administration of the law may hamper the operations of honest tradesmen, it must be accepted as an imposition for the general

[3]   welfare.   The policy of the law, however, is a matter for legislative control, and does not concern the courts.

In our opinion, the statute does not infringe upon any provision of our state Constitution, and is a valid exercise of police power.

Counsel for respondent contends that, even though the statute be upheld, the order of the court should be affirmed, because, [4]   it is insisted, the complaint discloses that plaintiff is but a "roving" creditor of the Hefferlin Mercantile Company.   Upon the assumption that plaintiff's action is in the nature of a creditor's bill, it is insisted that it is not disclosed that plaintiff brought itself into privity with the property transferred to defendant Moon by the sale of March 15, 1911, by attachment or other lien, as required by courts of equity generally.   (*Wilson* v. *Harris,* 21 Mont. 374, 54 Pac. 46; *Raymond* v. *Blancgrass,* 36 Mont. 449, 15 L. R. A. (n. s.) 976, 93 Pac. 648; *Wyman* v. *Jensen,* 26 Mont. 227, 67 Pac. 116.)   In *Wilson* v. *Harris* there was considered subdivision 3 of section 186, First Division, Compiled Statutes of 1887, which read as follows: "Personal property capable of manual delivery shall be attached by taking it into custody."   And it was held by a divided court that the method there indicated was exclusive.   By an amendment approved March 7, 1899, that subdivision, which had been carried into the Code of Civil Procedure of 1895, as subdivision 3 of section 895, was made to read as follows: "Personal property capable of manual delivery, must be attached by taking it into custody, except in cases in which personal property, capable of manual delivery is in the possession of a third person, and such personal property, so in the possession of a third person, may be attached in the same manner as debts or credits and other personal property not capable of manual delivery as hereinafter provided."   While subdivision 5 of the same section was amended to provide: "5. Debts or credits and personal property not capable of manual delivery, and personal property in the possession of a third person, must be attached by leaving with the person owing such debt, or having in his possession or under his control such credits and personal property, or with his agent, a copy of the writ

and a notice that the debts owing by him to the defendant, or the credits and other personal property in his possession, or under his control belonging to the defendant, are attached in pursuance of such writ.'' (Laws of 1899, p. 139.) The section as thus amended is now 6662, Revised Codes.

Whatever ground there may have been for a diversity of opinion prior to the amendment was removed altogether by the legislature, and since 1899 the *only* method of attaching personal property in the possession of a third person has been by garnishment process. Whenever the officer making the service leaves with the third party having possession of personal property belonging to the debtor, a copy of the writ of attachment and a notice that the property is attached in pursuance of such writ, the result is an attachment of such property, just as effective for every purpose as if it had been taken into actual custody by the officer, and the resulting lien is, in contemplation of law, of precisely the same character. If, then, the lien created by the actual seizure of personal property under attachment prior to 1899 was sufficient to bring the creditor into such privity with the property thus impounded as to enable him to pursue the remedy by creditors' bill—and the authorities are unanimous that it was—the lien created by the service of a copy of the writ of attachment and the notice upon a third party having in his possession personal property belonging to the debtor, pursuant to the amended statute, is for the same reason sufficient for that purpose.

But in the present instance the writ of attachment was not employed. Plaintiff, having reduced its claim to judgment, sought to fasten a lien upon personal property of the judgment debtor in the hands of Moon, a third party, by the service of an execution made in the same manner as attachment is levied under subdivision 5 of the amended statute of 1899, section 6662, Revised Codes, above. The question whether any lien was created by this service is before us.

Counsel for respondent argues—and not without some foundation—that the character of the writ of execution and the duty of the officers under it are such that actual possession of personal

[5] property capable of manual delivery is necessary to make the levy effective for any purpose, and *Wyman* v. *Jensen,* above, is cited to support this contention. *Wyman* v. *Jensen* appears to have been decided upon the authority of *Wilson* v. *Harris,* and without specific reference to the change wrought in the statute in the *interim* by the amendment made in 1899. But, even so, there was ground for the assumption at that time that the amendment to the attachment statute was not intended to affect the execution statute. However, that ground was removed completely by the legislature in 1909 in adopting the arrangement as well as the substance of the Revised Codes of 1907. (Chapter 1, Laws of 1909.) Since that time the language of section 6821, Revised Codes, ''Shares and interests in any corporation or company, and debts and credits, and all other property, both real and personal, or any interest in either real or personal property, and all other property not capable of manual delivery, may be attached on execution, in like manner as upon writs of attachment,'' is directly referable to the amended attachment statute found in section 6662, above; and whatever other effect it may have had, the service of the copy of the writ of execution upon Moon, together with a notice that any personal property in his possession or under his control belonging to the Hefferlin Mercantile Company was attached in pursuance of such writ, operated to fasten upon such property a specific lien in favor of this plaintiff sufficient to enable it to prosecute a creditors' bill against Moon.

We shall not stop to determine the form of action presented [6] by this complaint. ''The form in which an action is brought is of no consequence; nor does it matter that the complaint contains allegations not appropriate to the purpose sought to be attained. In determining the issues of law presented by a general demurrer to the complaint, * * * matters of form will be disregarded, as well as allegations that are irrelevant or redundant; and if, upon any view, the plaintiff is entitled to relief, the pleading will be sustained.'' (*Raymond* v. *Blancgrass,* above.)

In *Kohn* v. *Fishbach*, 36 Wash. 69, 104 Am. St. Rep. 941, 78 Pac. 199, it was held, in construing a bulk sale statute in every essential identical with our own, that the failure of the pur-
[7]   chaser to comply with the law converts him into a trustee of the property purchased, to the extent of plaintiff's claim at least, and it is immaterial that he may have mingled the purchased goods with property of his own so as to destroy their identity, or converted them into cash. Equity looks beyond the mere form to the substance, and will hold the trustee for the value. (*Appel Mercantile Co.* v. *Barker,* above; *Jaques & Tinsley Co.* v. *Carstarphen Warehouse Co.,* above.) If defendant Moon had the identical property in his possession at the time the execution was levied, he is liable under section 6667, Revised Codes. So that, from whatever viewpoint the complaint be treated, it is sufficient to entitle plaintiff to relief, and the general demurrer should have been overruled.

It is true that the complaint does not allege directly that Anderson & Co. did not comply with the law. The effect is the
[8]   same, however; for in that portion of the complaint quoted above, it is made to appear that the Hefferlin Mercantile Company did not furnish a list of creditors, and plaintiff's allega-tion that no part of its claim has been paid discloses that the demands of the law were not met. The complaint may be
[9]   somewhat ambiguous, but, if so, that character of defect was not reached by a general demurrer. (Sec. 6535, Rev. Codes.)

The judgment is reversed and the cause is remanded for further proceedings.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.